### SIMIS v. SIMIS et al.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. DEEDS (§ 210*)—SUFFICIENCY OF EVIDENCE—CONSIDERATION.

    Evidence in an action to compel a reconveyance of premises conveyed by plaintiff to his wife *held* not to show that plaintiff was induced to convey the property to her to prevent his creditors from levying thereon, but that the conveyance was absolute, in consideration of her payment of his debts.

    [Ed. Note.—For other cases, see Deeds, Dec. Dig. § 210.*]

2. FRAUDS, STATUTE OF (§ 119*)—ENFORCING PAROL AGREEMENT—PREVENTION OF FRAUD.

    In order to prevent the statute of frauds being used to perpetrate fraud, equity sometimes enforces a parol agreement for reconveyance of property, after default in performance, regarding the grantee as a trustee ex maleficio.

    [Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 119.*]

3. EVIDENCE (§ 443*)—PAROL EVIDENCE—WRITTEN CONTRACT.

    Plaintiff and his wife executed a written contract whereby he agreed to convey to her his interest in certain premises for the sum of $5,000, and she agreed to pay his outstanding debts, including liens on the property, not exceeding the sum of $5,000. *Held*, that such contract superseded any prior existing parol agreement by which plaintiff's wife was to reconvey the property to him.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2048–2051; Dec. Dig. § 443.*]

4. FRAUDULENT CONVEYANCES (§ 172*)—RIGHTS OF PARTIES—COMPELLING RECONVEYANCE.

    One who conveys property without consideration in order to delay or defraud his creditors cannot compel a reconveyance thereof in equity; such a transaction being contrary to public policy.

    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 523–529; Dec. Dig. § 172.*]

Appeal from Special Term, New York County.

Action by William Simis against Ada Louise Simis and others. From an interlocutory judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

James S. Darcy, for appellants.

Leon Kauffman (Joseph M. Herzberg, on the brief), for respondent.

---

LAUGHLIN, J. The plaintiff is the husband of the defendant Simis, and he brought this action for the specific performance of a parol contract by which he alleges she agreed to reconvey to him premises, known as 28 Rivington street, borough of Manhattan, New York, and to cancel two mortgages thereon, one of which was executed by her to the defendant Soper and the other to the defendant Pepper. The theory upon which the plaintiff attempts to sustain the action is that he conveyed and had the premises conveyed to his wife by his trustee, who held the record title, on an agreement resting in parol by which she was to reconvey the same to him after paying his debts, and that the mortgages were made without consideration. The appellants contend that the plaintiff is not entitled in any event to equitable relief, for the reason that his purpose in conveying and in having the premises conveyed to his wife was to hinder, delay, and defraud his creditors, and that the finding by the trial court that such an agreement was made is against the weight of evidence.

In 1905 the plaintiff attained his majority, and he then succeeded, by virtue of his mother's will, to an undivided one-half interest in four parcels of real estate as a tenant in common with his brother, Milford Simis, who succeeded to the other one-half interest therein. One of the parcels was the premises in question, and the other three were 176 Lexington avenue, 50 East Broadway, and a tract of land at Far Rockaway. In November, 1906, the substituted trustee under the will of plaintiff's mother, acting for plaintiff's brother, brought an action for a partition of the four parcels between plaintiff and his brother, and made the plaintiff and his wife parties defendant. On the 2d day of August, 1907, plaintiff deeded to his wife his undivided one-half interest in the premises at Far Rockaway, as a voluntary gift, for her support and the support of their infant child. It appears that it was expected that the plaintiff would receive the Far Rockaway property as part of his share in the partition action, and it had been so understood with his brother; and his testimony shows that he intended, not only that his wife should have his undivided one-half interest therein, but that she should have the entire interest in fee simple absolute, free and clear of incumbrances. In March, 1908, the plaintiff was indebted to various creditors in amounts aggregating about $10,000, some of which were in judgment, and many of them were pressing their claims, and he feared that they would recover judgments thereon and sell his interest in this real estate. He testified that it was agreed between him and her that he should convey it to her, that she should allow him $50 per week, and that after his debts were paid it should be reconveyed to him, and that they went to their attorney with a view to having this done, and that thereupon, and on the 27th day of March, 1908, the attorney had them both execute a full-covenant warranty deed of plaintiff's undivided one-half interest in the three remaining parcels to one Heyson, who was president of a bank at Far Rockaway. The evidence is controverted as to whether it was intended that Heyson should hold the title for any considerable time, or whether the conveyance to him was for the purpose of passing title to the wife after such lapse of time as would not give rise to the inference on

the part of creditors that the conveyance to Heyson was voluntary and with a view to passing title to plaintiff's wife.

The plaintiff admits that the object of this transfer was to keep the property away from his creditors, as he says, so that "they could not swoop down on the property and take it away from us"; but he contends that it was his intention to pay his creditors, and it appears that they were subsequently paid by his wife. The plaintiff's theory appears to be that he thus put his property in Heyson's name temporarily, in trust for himself, on the understanding that it was to be reconveyed to him by Heyson, or by his wife, whichever of them should have title after the debts were paid. The conveyance was absolute in form, and no trust agreement or other agreement was made in writing at the time. The plaintiff's wife denied the alleged parol agreement to reconvey the premises to him, and the attorney, in whose presence the plaintiff claims it was made, denied that he heard it. Heyson was examined as a witness, but was not questioned on this precise point. On the 6th day of August, 1908, the plaintiff and his wife entered into a formal contract in writing, whereby he agreed to sell and convey to her his interest in the *premises in question* 28 Rivington street, for the sum of $5,000, and in and by which she agreed to pay outstanding debts, including liens on his property, not exceeding the sum of $5,000. The debts and liabilities of the plaintiff then existing and thereafter incurred considerably exceeded the said amount.

Plaintiff's wife had raised money by mortgage on her property at Far Rockaway, which she used to pay his obligations, and according to her testimony he requested her to raise more money for that purpose; but she refused to do so unless he would convey to her his undivided one-half interest, not only in the premises in question, but in the other two parcels as well, and accordingly, on the 7th day of December, 1908, the plaintiff, by a full-covenant warranty deed, conveyed to his wife his undivided one-half interest in the other three parcels, the conveyance reciting the usual consideration of $1 and other good and valuable considerations; but the outstanding record title thereto at this time was in Heyson, and this deed was not recorded. In June, 1909, the partition action was amicably settled, and on the 21st day of that month said Heyson and wife, by direction of plaintiff, conveyed an undivided one-half interest in the premises 176 Lexington avenue and 50 East Broadway to the defendant Simis, and on the same day she *and the plaintiff* conveyed the same to plaintiff's brother. On the same day Heyson and wife, by direction of the plaintiff, conveyed the premises in question to his wife by quitclaim deed, and plaintiff's brother, by like direction, at the same time conveyed to her an undivided one-half interest in the premises in question and in the tract of land at Far Rockaway, so far as the same then remained unsold. It seems that plaintiff's wife had in the meantime sold part of the Far Rockaway tract, and presumably, although the fact does not appear, the plaintiff's brother joined in the conveyances, or subsequently conveyed his interest, to her grantees. The plaintiff's wife obtained the sum of $20,000 on a sale of part of the tract of land at Far Rockaway, and she paid over

part of this amount to plaintiff's brother to equalize the valuations of the parcels of land partitioned, and applied the balance to the payment of the plaintiff's debts, and expended several thousand dollars more, the proceeds of loans on her Far Rockaway property, in the payment of his debts, aggregating in all about $28,000, and as a result she had left of the Far Rockaway tract, which concededly was intended to be an absolute gift to her, only a parcel with 135 feet frontage, with a house which was mortgaged for $8,000, leaving only a small equity.

The interlocutory judgment, from which the appeal is taken, so far as it need be considered, directs the defendant Simis to reconvey the premises to the plaintiff and to account for the rents received, but gives her a lien upon the property for the excess of the amount she expended in the payment of the plaintiff's obligations over and above the amount she has received, and possession until it shall be paid. There is no evidence pointing to an express agreement between plaintiff and his wife to the effect that she was to be reimbursed for moneys expended on his account before she should be obliged to reconvey the premises.

[1] The plaintiff seeks to sustain the judgment based on the parol agreement, notwithstanding the statute of frauds, on the ground that he was induced by his wife, and by an attorney who represented both of them, to convey and have the property conveyed to her to prevent his creditors levying thereon. The preponderance of the evidence is against this contention, and the documentary evidence and other acts of the plaintiff, to which reference has been made, and many letters subsequently written by him prior to the separation of plaintiff and his wife in August, 1909, show that it was his purpose and intention to vest the title in his wife absolutely in consideration of her paying his debts. It appears that she fulfilled her agreement in that regard.

[2] Courts of equity sometimes, in order to prevent the statute of frauds being used to perpetrate fraud, enforce a parol agreement for a reconveyance of property, and after default in the performance of such parol agreement regard the grantee as a trustee ex maleficio. See Gallagher v. Gallagher, 135 App. Div. 457, 120 N. Y. Supp. 18, affirmed 96 N. E. 1115. The case at bar, however, does not fall within that rule. There was no fraud on the part of the defendant Simis, and moreover, as already stated, the preponderance of the evidence disproves the existence of a parol agreement by which she was to reconvey the premises to the plaintiff.

[3] It is difficult to perceive how the plaintiff could succeed, even if there had been at the outset a parol agreement to reconvey the premises to him; for the effect of the contract of August 6, 1908, by which the premises in question were to be conveyed to the plaintiff's wife in consideration of her paying his debts to a certain amount, and the conveyance by him to her, and the conveyances to her by Heyson at his instance, and his having joined with her in consummating the settlement of the partition action, constituted new contracts and conferred new rights, which would supersede such parol agreement.

[4] Moreover, we are of opinion the plaintiff is not in a position to invoke the aid of a court of equity, for it is quite evident that he in-

tended to hinder and delay, if not to defraud, his creditors. The court has found that the purpose was "to protect the property against creditors, and for no other purpose." There is no force in the contention that this is an objection available only to the plaintiff's creditors. When a person is involved, and pressed by his creditors, and he conveys premises without consideration, and without being fraudulently induced so to do, but with a view to hindering, delaying, or defrauding them, he is not entitled to the assistance of a court of equity in obtaining a reconveyance, for it is against public policy to countenance such conduct.

These views render it unnecessary to consider whether the other appellants would be entitled to retain their mortgages, even should the appellant Simis be required to reconvey the premises, and likewise render it unnecessary to consider alleged errors with respect to the reception and exclusion of evidence.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.